UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-CV-00035-JHM

AUTO CLUB PROPERTY-CASUALTY
INSURANCE COMPANY                                                                                              PLAINTIFF

V.

RICHARD DENTON, REBECCA HUTSELL,
PATSY BASHAM, and E.B., a minor                                                                         DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on a motion to dismiss this declaratory judgment action for lack of subject matter jurisdiction by Defendants Patsy Basham and E.B., a minor child [DN 8]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Dismiss is **GRANTED**.

I. BACKGROUND

On July 9, 2014, Defendants Patsy Basham and E.B., a minor, ("the Bashams") filed a complaint against Defendants Richard Denton ("Denton") and Rebecca Hutsell ("Hutsell") in Webster Circuit Court, alleging various state-law claims. All of the claims arose from an incident on July 10, 2013. According to the state court complaint, Hutsell had been visiting Basham at Basham's apartment on July 10, 2013. (State Compl. [DN 1-3] ¶ 6.) The complaint alleges that Hutsell, upon leaving the apartment and entering the parking lot, "became engaged in a verbal altercation with [E.B.]," Basham's autistic minor daughter. (Id. ¶ 7.) At some point during the altercation, Hutsell entered and started the pick-up truck she had driven to the apartment. The truck was owned by Denton, Hutsell's father. (Id. ¶ 8.) Thereafter the altercation between Hutsell and E.B. escalated, and "Hutsell leaned her head and torso from the

pick-up truck's window, grabbed up [E.B.] and began choking and pulling the hair of [E.B.]." (Id. ¶ 9.) Upon witnessing the incident from a window of her apartment, Basham "fled to the parking lot to rescue [E.B.] from" Hutsell. (Id. ¶ 10.) The complaint alleges that "Hutsell accelerated the pick-up truck while holding on to [E.B.] and while [Basham] attempted to free her daughter from [Hutsell]'s grasp" and that, in so accelerating, Hutsell ran over Basham's foot. (Id. ¶ 11.) According to the complaint, Hutsell then fled the scene, running over Basham's foot a second time, and left Basham and E.B. injured. (Id. ¶ 12.) The complaint also alleged that "[o]n information and belief, Defendant Hutsell was under the influence of prescribed and/or illicit drugs at the time [of the alleged events], which affected her ability to safely and properly operate the Dodge Ram vehicle." (Id. ¶ 13.)

Based on this incident of July 10, 2013, the Bashams asserted five state-law tort claims in the state court action. Against Hutsell, Basham asserted a claim for negligence (Count I) and E.B. asserted claims for battery (Count II), negligent infliction of emotional distress (Count III), and loss of consortium and services (Count IV). Against Denton, the Bashams asserted a claim for negligent entrustment (Count V). Count II, E.B.'s claim against Hutsell for battery, additionally asserts a claim for punitive damages. (State Compl. [DN 1-3] ¶ 22 ("The foregoing actions were intentional, willful and wanton and done toward [E.B.] with sufficient malice and oppression to warrant the imposition of punitive damages against . . . Hutsell.").)

At the time of the alleged incident, Hutsell was an insured under her father's automobile insurance policy provided by Plaintiff Auto Club Property-Casualty Insurance Company ("Auto Club"). Auto Club is defending Denton and Hutsell in the underlying state court action under a reservation of rights.

On March 3, 2015, Plaintiff Auto Club filed a petition in this Court pursuant to 28 U.S.C. §§ 1332 and 2201,[1] seeking a declaration that it has no duty to defend or indemnify its insureds, Hutsell and Denton, for the incident of July 10, 2013, based on two policy exclusions. First, Auto Club asserts that coverage is barred to the extent that the Bashams' damages exceed the minimum limits of liability under the MVRA as they are expected, intended or should have been reasonably expected. The exclusion states:

> To the extent the limits of liability under PART I exceed the minimum limits of liability required by the Kentucky Motor Vehicle Reparations Act, we do not cover liability for: . . . (g) bodily injury . . . expected, or intended or which should have reasonably been expected by the insured person, even if the bodily injury . . . is different from, or greater than, that which is expected or intended;

(Auto Club Policy, Edition 5-13, Part I - Bodily Injury and Property Damage Liability Coverages, Exclusion (4)(g) [DN 1-2] 7.) Second, Auto Club asserts that coverage is barred for E.B.'s claim for punitive damages by the punitive damages exclusion. That exclusion states:

> Damages Not Covered. The Liability Coverage does not cover: Punitive damages, exemplary damages or statutorily imposed treble or multiplied damages for which an Insured person is legally liable because of bodily injury or property damage arising out of the ownership, maintenance or use of the insured car.

(Auto Club Policy, Edition 5-13, Part I - Bodily Injury and Property Damage Liability Coverages, Exclusion (1) [DN 1-2] 6.)

On April 2, 2015, the Bashams moved to dismiss this action for lack of subject matter jurisdiction arguing that this Court should decline to exercise jurisdiction over Plaintiff's declaratory judgment claim. Additionally, Defendant Patsy Basham objects that there was

---

[1] The Declaratory Judgment Act only extends the jurisdiction of a federal court; subject matter jurisdiction must first be proper under 28 U.S.C. § 1331, federal question, or § 1332, diversity of citizenship. In this case, the action was brought based on diversity of citizenship: Plaintiff is a citizen of Iowa and all Defendants are citizens of Kentucky. (Compl. [DN 1] ¶¶ 2–4.) Diversity of citizenship is present here. With respect to the amount in controversy, the general rule is that "the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." Rosen v. Chrysler Corp., 205 F.3d 918, 920–21 (6th Cir. 2000). Auto Club has asserted in its complaint that it believes "the amount in controversy exceeds the jurisdictional minimum amount of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs." (Compl. [DN 1] ¶ 12.) Accordingly, diversity jurisdiction in this case is proper.

insufficient process and insufficient service of process because it does not appear that she has been served with a summons in this action in her individual capacity.[2]

## II. STANDARD OF REVIEW

This matter is an action for declaratory relief under the Federal Declaratory Judgment Act, which provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). A court's exercise of jurisdiction under the Declaratory Judgment Act is not mandatory. Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 812 (6th Cir. 2004) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)). In determining whether to exercise such discretion, and thus whether a case is appropriate for declaratory judgment, this Court considers the five factors enumerated by the Sixth Circuit in Grand Trunk Western Railroad Co. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984):

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

Bituminous, 373 F.3d at 813 (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000)).

---

[2] The Bashams include this argument in their motion, but the argument is not mentioned or addressed in their briefs in support of the motion. Patsy Basham was served individually per the Summons filed of record [DN 9].

4

The Sixth Circuit has "held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" Bituminous, 373 F.3d at 812 (quoting Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co., 791 F.2d 460, 463 (6th Cir. 1986)). Further, the Sixth Circuit has emphasized that "such actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." Id. (alteration in original) (quoting Manley, 791 F.2d at 463) (citing Roumph, 211 F.3d 964; Grand Trunk, 746 F.2d at 326).

### III. DISCUSSION

Plaintiff urges the Court to exercise jurisdiction over this matter, arguing that all five of the Grand Trunk factors counsel in favor of jurisdiction. The Bashams contend that the Court should decline to exercise jurisdiction over this case, arguing that a balance of the Grand Trunk factors weigh against the exercise of jurisdiction over the insurance coverage dispute. Weighing the five factors, the Court believes that exercising jurisdiction in this case would be improper in these circumstances and declines to do so.

**A. Factors 1 and 2: Settlement of the Controversy and Clarification of Legal Relations**

In the context of lawsuits by insurance companies to determine policy coverage obligations, courts often consider the first and the second factors together. See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC, 495 F.3d 266, 271–72 (6th Cir. 2007); see also Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 557 (6th Cir. 2008) (noting that the "second factor in the Grand Trunk analysis is closely related to the first factor and is often considered in connection with it"). As the Sixth Circuit explained in Scottsdale Insurance Co. v. Flowers, 513

5

F.3d 546, 555 (6th Cir. 2008), two lines of precedent have developed within the Circuit with respect to these first two Grand Trunk factors.

One line of cases "has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." Flowers, 513 F.3d at 555 (citing Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir. 2003)). That line of cases has also held, with respect to the second factor, that "the district court's decision must only clarify the legal relations presented in the declaratory judgment action." Id. at 557 (citing Northland, 327 F.3d at 454). However, another line of cases "has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." Id. at 555 (citing Travelers, 495 F.3d at 272; Bituminous, 373 F.3d at 814). In this line of cases, the district court's decision "must also clarify the legal relations in the underlying state action" in order for the second factor to weigh in favor of jurisdiction. Id. at 557 (citing Travelers, 495 F.3d at 272; Bituminous, 373 F.3d at 814). As stated in previous opinions, in dealing with the first two factors, this Court joins those courts which, after Flowers, conclude that where district courts, in declaratory judgment actions, will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action, the declaratory action need only settle the controversy and clarify the legal relations between the insured and the insurer.

Although Auto Club is not currently a party to the action pending in state court, resolution of Auto Club's declaratory judgment action would require this Court to engage in fact-finding that may affect the underlying action. Auto Club seeks a declaration by this Court that it has no duty to defend or indemnify Hutsell and Denton for the incident that occurred on July 10,

2013 based on exclusions in its insurance policy for punitive damages and for compensatory damages exceeding the minimum limits of Kentucky's MVRA for bodily injury "expected, intended or which reasonably should have been expected by the insured person," (Auto Club Policy, Edition 5-13, Part I – Bodily Injury and Property Damage Liability Coverages, Exclusions (1), (4)(g) [DN 1-2] 6–7). Determining the applicability of these exclusions will require the Court to inquire into and make factual determinations regarding the allegations in the Webster Circuit Complaint and the actions that serve as the basis for the asserted liability. For example, to determine whether the July 10, 2013 incident falls under the "expected or intended" exclusion, this Court would be required to determine whether the bodily injury suffered by the Bashams was "expected, or intended, or . . . should have reasonably been expected" by Hutsell. Resolving this issue would demand an inquiry as to Hutsell's intent—a factual issue that seems to this Court likely to be a part of the resolution of the civil action currently pending in state court. See Westfield Ins. Co. v. Siegel Founds., No. 3:10-CV-713-S, 2011 WL 3489353, at *4 (W.D. Ky. Aug. 9, 2011). "These inquiries would not merely require consideration of matters of law that could be cleanly separated from the state-law proceedings, but rather would require factual analysis that would give rise to the possibility of contradictory results in state and federal court." Id. As a result, this Court cannot settle the question of coverage without engaging in fact-finding that may impact the underlying action. Accordingly, the Court finds that while the declaratory action "might clarify the legal relationship between the insurer and the insured, [it] do[es] not settle the ultimate controversy between the parties which is ongoing in state court." Flowers, 513 F.3d at 555 (citing Travelers, 495 F.3d at 272; Bituminous, 373 F.3d at 814).

Furthermore, while this action would clarify the legal relations presented by the declaratory action, it would not "clarify the legal relations in the underlying state action."

7

Flowers, 513 F.3d at 557; see Bituminous, 373 F.3d at 812 (quoting Manley, 791 F.2d at 463) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.") As a result, it would not serve a "useful purpose." See Bituminous, 373 F.3d at 813–14 ("The declaratory judgment action in federal court could serve no useful purpose. The federal court could either reach the same conclusions as the state court, in which case the declaration would have been unnecessary . . . or the federal court could disagree with the state court, resulting in inconsistent judgments."); Westfield, 2011 WL 3489353, at *4; Nautilus Ins. Co. v. Grayco Rentals, Inc., No. CIV.A. 10-133-ART, 2011 WL 839549, at *4 (E.D. Ky. Mar. 7, 2011). Given the potential for inconsistent rulings, "[t]he state court can . . . clarify these very same issues—perhaps better, with its state-law expertise and familiarity with this case." Nautilus, 2011 WL 839549, at *4 (citing AmSouth Bank v. Dale, 386 F.3d 763, 786 (6th Cir. 2004)).

Accordingly, the Court finds that the first two factors weigh against exercising jurisdiction.

### B. Factor 3: Procedural Fencing and Res Judicata

The third factor to be considered is whether the use of the declaratory judgment action is motivated by "procedural fencing" or likely to create a race for *res judicata*. "The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" Flowers, 513 F.3d at 558 (quoting AmSouth Bank, 386 F.3d at 788). The Sixth Circuit has held that it is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." Id.

8

In this case, there is no evidence of a race for *res judicata* or an improper motive. If no evidence of procedural fencing or a race for *res judicata* is presented, then this factor is neutral, and does not weigh in favor of or against exercising jurisdiction. See Travelers, 495 F.3d at 272 ("Although no improper motive prompted this action, this factor is neutral."); Owners Ins. Co. v. Elder Heating & Air, Inc., No. 5:09-CV-197, 2010 WL 1418734, at *4 (W.D. Ky. Apr. 7, 2010); Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am., 565 F. Supp. 2d 779, 789 (E.D. Ky. 2008).

**C. Factor 4: Increase of Friction and Improper Encroachment**

In considering the fourth factor—whether the exercise of federal jurisdiction would increase friction between federal and state courts—three additional sub-factors are considered:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Bituminous, 373 F.3d at 814–15 (quoting Roumph, 211 F.3d at 968). The Court considers each sub-factor in turn.

*Importance of Underlying Factual Issues to Resolution of the Case.* The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." Flowers, 513 F.3d at 560. The Sixth Circuit has recognized that in actions seeking a declaration of insurance coverage, such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court. See Northland, 327 F.3d at 454. However, where "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings

9

made by the state court" "the exercise of jurisdiction would be inappropriate." Flowers, 513 F.3d at 560 (citing Travelers, 495 F.3d at 272).

As explained above, any determination as to Auto Club's duty to defend or indemnify Hutsell and Denton would inevitably require fact-finding by this Court as to what occurred during the altercation between the Bashams and Hutsell and regarding Hutsell's state of mind and level of culpability. By doing so, this Court would encroach on the state court's jurisdiction because the state court would be forced to either follow this Court's decision or risk an inconsistent decision. See Westfield, 2011 WL 3489353, at *5 ("In light of the danger of inconsistent findings by the state and federal courts, we conclude that this factor counsels strongly against the exercise of federal jurisdiction."). Therefore, the first sub-factor weighs against exercising jurisdiction, as the coverage question related to the punitive damages and "expected or intended" exclusions is dependent on the outcome of factual inquiries made in the underlying state action.

*State Court's Position to Evaluate Factual Issues*. The second sub-factor focuses on whether this Court or the state court is in a better position to resolve those underlying factual issues. The questions about Auto Club's duties to defend and to indemnify and of Hutsell's culpability are all state law questions "with which the Kentucky state courts are more familiar and, therefore, better able to resolve." Travelers, 495 F.3d at 273 (quoting Bituminous, 373 F.3d at 815). This Court would have to engage in fact-finding to determine the applicability of the punitive damages and "expected or intended" exclusions. The "state court is in a marginally better position to decide the issues in this case because all issues are before the state court and involve questions of state law." Nautilus, 2011 WL 839549, at *3. Accordingly, the Court finds that this sub-factor weighs against exercising jurisdiction.

*Close Nexus Between Issues and State Law and Policy*.  The final sub-factors "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court."  Flowers, 513 F.3d at 561.  This is a case about an insurance contract.  "[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation."  Id. at 273 (quoting Bituminous, 373 F.3d at 815).  Additionally, this case is not likely to turn on federal common law or federal statutory law.  Rather, state law will dictate the resolution of the state court action in Webster Circuit Court and state law will dictate the resolution of this declaratory judgment action.  See Horace Mann Ins. Co. v. Alberts, No. CIV.A. 1:06CV-181-M, 2007 WL 3025071, at *4 (W.D. Ky. Oct. 15, 2007); Westport Ins. Corp. v. Al Bourdeau Ins. Servs., No. 07-12106, 2007 WL 2225874, at *4 (E.D. Mich. Aug. 2, 2007).  Just as in Travelers, "[t]his is not a case where federal law will come into play, and, therefore, a state court forum is preferable."  Travelers, 495 F.3d at 273.  Therefore, the Court finds that this sub-factor weighs against exercising jurisdiction.

Accordingly, the overall effect of the three sub-factors (and thus the overall effect of the fourth factor) weighs against the Court's exercise of jurisdiction.

**D.  Factor 5: Alternative Remedy**

The final factor to consider is the availability of alternative remedies that are better or more effective than a federal declaratory judgment.  An alternative remedy available to Auto Club is to seek a declaratory judgment in state court.  Kentucky provides a declaration of rights procedure under KRS 418.040.  In addition, Auto Club could file an indemnity action at the conclusion of the underlying state action.  See Bituminous, 373 F.3d at 816.  And even if, as Auto Club says, it may have trouble intervening in the state court case, (Pl.'s Resp. to Defs.

11

Bashams' Mot. Dismiss [DN 10] 7), it could still file a separate declaratory action or file one at the "conclusion of the underlying state action." Travelers, 495 F.3d at 273; see Nautilus, 2011 WL 839549, at *4. While Auto Club does have alternate remedies, it is not clear that these are better or more effective remedies. See Flowers, 513 F.3d at 562. Nonetheless, this Court finds this factor weighs against federal discretionary jurisdiction. See id.; Travelers, 495 F.3d at 273.

Accordingly, the Court finds that the balance of these factors weighs against exercising jurisdiction in the present case. Thus, the Court declines to exercise jurisdiction of this declaratory judgment action.

## IV. CONCLUSION

For the reasons set forth above, the Court declines to exercise federal discretionary jurisdiction over this declaratory judgment action. Therefore, **IT IS HEREBY ORDERED** that the motion by Defendants Patsy Basham and E.B., a minor child, to dismiss this action for lack of subject matter jurisdiction [DN 8] is **GRANTED**.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**
July 21, 2015

cc:   Counsel of Record